LAST CHANCE RANCH CO. v. ERICKSON.

No. 5023.   Decided October 10, 1933.   (25 P. [2d] 952.)

478

*H. L. Mulliner,* of Salt Lake City, for appellant.

*G. M. Sullivan* and *Chris Mathison,* both of Salt Lake City, for respondent.

STRAUP, Chief Justice.

This action was brought for specific performance of an alleged agreement and to require the defendant, Hilda Erickson, in accordance therewith, to assign and deliver to the plaintiff a certificate owned by her for 66 shares of the capital stock of the Grantsville National Farm Loan Association, or to procure a transfer thereof to be made to the plaintiff on the books of the association.

The complaint was filed in the cause January 11, 1928. On issues joined, several proceedings and hearings were had which finally resulted in a judgment rendered and entered January 11, 1931, in favor of the plaintiff and against the defendant. The defendant appeals.

By the complaint it is alleged that the defendant was the secretary of the Grantsville National Farm Loan Association, and as such secretary had the authority to transfer the shares, *when properly requested so to do by the owner thereof and when properly and regularly indorsed and duly presented for transfer;* that on October 9, 1922, the defendant, Hilda Erickson, in her own right, was the owner of 320 acres of land fully described, situate in Tooele county, subject to a mortgage of $6,600 in favor of the Federal Land Bank of Berkeley, Cal.; that she also was the owner of 66 shares of the capital stock of the Grantsville National Farm Loan Association, which stock was issued to her under the rules and regulations pertaining to federal farm loans at the time she gave the mortgage upon the real property and in connection with the loan obtained by her. It then is alleged that on October 9, 1922, the plaintiff purchased from her the real estate "and said 66 shares of stock in said Grantsville National Farm Loan Association, for

the sum of $18,400, which sum the plaintiff then and there paid to the defendant"; that the purchase was subject to the mortgage loan of $6,600 which the plaintiff assumed and agreed to pay in addition to the $18,400, and that in consideration thereof the defendant "agreed and promised in addition to convey the said land to the plaintiff, to assign to the plaintiff said 66 shares of the capital stock of the said Grantsville National Farm Loan Association and transfer or procure the same to be transferred to the plaintiff on the books" of the association, or otherwise to give the plaintiff written evidence of the plaintiff's ownership of the shares of stock.

It then further is alleged that the defendant recognized plaintiff's ownership of the stock "by the payment of it of certain dividends upon same"; that the defendant made certain claims against the plaintiff for the value of personal property upon the land and taken over by the plaintiff, and declined to assign and transfer the stock until the plaintiff made payment to the defendant for such personal property, and that certain claims were made by the plaintiff against the defendant for the shares of stock; that thereupon the plaintiff and the defendant on the 22d day of January, 1924, settled their respective claims upon the basis that the plaintiff pay to the defendant $680.55, "which payment should include and cover the personal property so taken over by the plaintiff and should include and cover any and all differences concerning said personal property and concerning the said 66 shares of stock, and that in consideration of said payment said defendant again agreed and promised to forthwith assign and deliver to the plaintiff and to transfer or procure to be transferred to the plaintiff" the shares of stock; that the defendant, in pursuance of the agreement of January 22, 1924, and upon the payment of $680.55, "then and there expressly agreed and promised to forthwith and immediately upon her return to Grantsville to assign to plaintiff and transfer to it" the shares of stock; but that the defendant at all

times failed and refused to do so and "now wrongfully asserts that plaintiff is not the owner of said stock and wrongfully" and in violation of her agreement refuses to assign or transfer the shares of stock to the plaintiff. Nowhere is it alleged in the complaint whether the promise or agreement to sell or assign the shares of stock was oral or in writing.

The defendant by her answer admitted she was the owner of the lands conveyed to the plaintiff subject to the $6,600 mortgage in favor of the Federal Land Bank of Berkeley; that she was the secretary of the Grantsville National Farm Loan Association, and that she was the owner of the 66 shares of the capital stock of the association and refused to assign or deliver them to the plaintiff; that she on October 9, 1922, sold and conveyed the real estate to the plaintiff for the sum of $18,400, subject to the mortgage of $6,600 which the plaintiff assumed and agreed to pay. She, however, denied that she sold, or at any time agreed to sell, the shares of stock to the plaintiff or to transfer them, or to cause them to be transferred, to the plaintiff. She further admitted that the plaintiff on or about the 22d day of January, 1924, paid her $680.55, but in settlement of a claim or demand asserted by her against the plaintiff for supplies and merchandise sold to it, and denied that thereby or otherwise she promised or agreed to assign or transfer the shares of stock to the plaintiff, and denied that any part of the consideration paid for the conveyance of the land, or in settlement of the demand or claim referred to, was for the sale or assignment or transfer of the shares of stock; and otherwise denied all the allegations of the complaint not specifically admitted. The defendant further alleged that the cause of action sued on by the plaintiff was barred by the statute of limitations, especially by section 6445, Comp. Laws Utah 1917, that "Civil actions can be commenced only within the periods prescribed" in the succeeding chapters "after the cause of action shall have accrued;" section 6467, that the period to commence

"an action upon a contract, obligation, or liability not founded upon an instrument of writing" was four years; and by section 6474, that "an action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

The court found the issues in favor of the plaintiff substantially as alleged in the complaint, and held that the action was not barred by limitation. So far as the particular matters are involved on the appeal, the court found that the defendant was the secretary of the Grantsville National Farm Loan Association; that she was the owner of 320 acres of land subject to the mortgage of $6,600 payable to and held by the Federal Land Bank of Berkeley, and that she also was the owner of 66 shares of the capital stock of the Grantsville National Farm Loan Association, which she had subscribed for in connection with the $6,600 loan, and that the stock was held as collateral security for the payment of the mortgage; that her husband was the owner of 320 acres adjoining the land owned by her, and that on October 9, 1922, she and her husband sold and conveyed the section of land, the 640 acres, to the plaintiff, and that "the defendant then and there as a part of said transaction and in consideration thereof sold and agreed to assign and transfer to the plaintiff the 66 shares of the capital stock" of the association, "all for the agreed price of $18,400 cash and the assumption by the plaintiff of the mortgage upon the land of the defendant in the sum of $6600"; that on or about August 10, 1923, the defendant paid to the plaintiff $10.70 dividends accruing on the 66 shares of stock; that on January 22, 1924, the parties had a settlement concerning differences between them whereupon the plaintiff paid the defendant $680.55 in full satisfaction of her claims against the plaintiff, and that in consideration of such payment "the defendant promised forthwith to deliver to the plaintiff" the shares of stock, but that the defendant had refused to do so; that "in the manner hereinabove stated the defendant continued to

recognize her contract to sell, assign and transfer" the shares of stock to the plaintiff, until after the month of January, 1924, and that she thereafter repudiated the contract and refused to assign or deliver or transfer the shares of stock to the plaintiff; and, the defendant having theretofore shown her intention "of performing her part of said contract in the future and by reason of the circumstances aforesaid, and particularly the said acts and conduct on the part of the defendant, a reasonable time for the performance of said contract on her part had not expired on the said 22nd day of January, 1924, and that she did not until after that date, deny said contract or breach the same." No finding was made as to whether the promise or agreement to sell or assign the shares of stock was oral or in writing. However, whatever promise or agreement there was as testified to by the plaintiff was oral and not in writing. Nor was the value of the stock alleged or found.

Upon such findings the conclusion was reached that the action was not barred, and a judgment or decree rendered and entered that the "defendant, Hilda Erickson, by a proper endorsement, or other proper writing, assign and deliver to the plaintiff the 66 shares of stock in her name and held by the Grantsville National Farm Loan Association in connection with the mortgage loan."

The principal assignments challenge the findings (1) that any agreement was had between the parties whereby the defendant promised or agreed to assign or transfer the shares of stock. That is put on the ground that the evidence received on behalf of the plaintiff with respect thereto was incompetent and permitted the plaintiff by parol over the defendant's objections to vary the terms of the deed and of the contract which also was in writing entered into between the parties on January 22, 1924, and on the further ground of insufficiency of the evidence to show that any agreement was had or entered into to sell, assign, or transfer the shares of stock to the plaintiff or to support the findings in such respect; (2) want of considera-

tion to support any such agreement; (3) challenging the finding and conclusion of law that the action was not barred; and (4) that the judgment is against law and is not supported by the evidence.

At the threshold let it be noted, and the proposition on the appeal is not disputed but admitted by the plaintiff; that the 66 shares of the capital stock owned by the defendant were personal property, and did not pass by the conveyance of the land to the plaintiff nor by its assumption of the mortgage. The Federal Land Bank of Berkeley so advised both parties. The deed by the defendant to the plaintiff was the usual statutory form of warranty deed containing a description of the land by metes and bounds together with all water rights used in connection with and to irrigate the described land, for an express consideration of $18,400 in cash and the assumption of the $6,600 mortgage which the plaintiff agreed to assume and pay, without any reference whatever to the shares of stock or to anything else, and, on the face of the deed, the expressed consideration was for the conveyance of the real estate and not for anything else. That is not disputed. After the execution and delivery of the deed October 9, 1922, and the recording of it October 11, the plaintiff through its secretary on October 18, wrote the Federal Land Bank of Berkeley that the plaintiff had purchased the real estate, describing it, "for a consideration of $25,000, that is to say, $18,400 cash and the assumption by the purchaser (the plaintiff) of your mortgage of $6,600. The corporation (the plaintiff) purchased the above described property subject to your mortgage, and you will kindly confer with the undersigned as secretary of the above corporation concerning any matter involving the said mortgage." In such communication no reference of any kind was made to the shares of stock or that they were included in the purchase or that the stated purchase price was for the land and the shares of stock, or that the defendant had agreed to assign or transfer the shares or any interest therein to the plain-

tiff.  And it was admitted by the plaintiff in open court "that the property covered was the real estate described in the deed, only the real estate, and that the deed recited the consideration for the money that was paid was $18,400 and the assuming of the $6600 mortgage," and that the deed "described only the real estate and made no reference to the stock."

Over the objection of the defendant, the secretary of the plaintiff, and who negotiated the purchase of the real estate on its behalf, was permitted to testify that two or three days before the deed was executed the defendant told him that there "was some stock or evidence of ownership in a local farm loan company of which she was the secretary, and that Dunlap (the president and principal owner of the plaintiff company) would get it.  She said that if Dunlap takes title to this ranch in his own name he will be a member of the company (the association).  The company (the plaintiff corporation) cannot vote under the rules of the association.  She explained that when she made the loan so much was held out, that the stock would be worth a certain amount of money and she said it would go to Dunlap or the company (the plaintiff).  I spoke to Mrs. Erickson a number of times about the transfer of this stock at Dunlap's request but she kept putting it off.  Nothing was said at the time the deed was drawn as to the date but the understanding was that she would transfer it at once.  The substance of the talk was between her and Mr. Dunlap and myself and that when the deal was closed the stock would be transferred at once because she told me that if the deed went to Dunlap in his own name he could vote it, but if it went to the corporation the corporation could not vote.  I said that made no difference, that Dunlap wanted it incorporated."  All this was admitted over the objection of the defendant.

Again, about a year and three months after the conveyance was made and the plaintiff had taken possession of the real estate, a controversy arose between the plaintiff

and the defendant respecting a claim or demand owing the defendant or the J. A. Erickson & Co., dealers in lumber, cement, etc., for machinery, supplies, and merchandise sold and delivered to the plaintiff at its request. The defendant at the request of the plaintiff furnished it an itemized account of the claim amounting to $838.25. Set-offs were claimed by the plaintiff amounting to $113.50. No claim for the shares of stock was included in the set-offs. So, on January 22, 1924, the parties got together and affected a settlement whereby the plaintiff agreed to pay and paid the defendant the sum of $680.55 in full payment of her claim and demands. A written agreement was thereupon entered into and signed by both parties, to which was attached the itemized claim of the defendant, and in which written agreement it was recited that the defendant had received from the plaintiff the sum of $680.55 *in full of all claims and demands of every kind and nature against the plaintiff and W. A. Dunlap;* that the payment was a compromise settlement; that it included payment of the attached bill; a claim for board against the plaintiff and a claim of the plaintiff for board against the defendant; a claim of the plaintiff for occupancy of the real estate by the defendant for a period after the same should have been turned over to the plaintiff; that a disc of the value of $50 and an 8-inch pipe about 293 feet in length was to belong to and be the property of the defendant; and that the settlement did not include compensation for the feeding of live stock of John A. Erickson by the foreman of the plaintiff, and that Erickson was owing the plaintiff the reasonable value for such feeding. The written contract with the itemized bill attached was put in evidence. Not anything was contained therein with respect to the shares of stock, nor was there any reference whatever made thereto.

Over the objection of the defendant, the secretary of the plaintiff who on its behalf negotiated the settlement was permitted to testify that prior to the settlement and the signing and execution of the written agreement he had

several conversations with the defendant in which she requested payment of her claims and demands; that the witness called her attention to the fact that the stock had not been transferred and that she told him she was deferring it until the plaintiff paid her bill; that, after the settlement was made and the written agreement prepared and read by the witness, he stated to the defendant: "I forgot to make any provision about this stock. You know this stock belongs to the company. She said, 'Yes, I know it does,' and I said to my stenographer, 'You can put that in the contract,' and she (the defendant) said, 'You can take my word for it. I will send you this when I get back to Grantsville,' " but no reference of any kind was made in the written agreement. That was shown by the writing itself put in evidence.

The defendant by her testimony denied all of the conversations testified to by the secretary of the plaintiff with respect to any agreement, oral or otherwise, to sell or transfer the shares of stock to the plaintiff. The secretary of the plaintiff was the only witness who testified concerning such matter, and the defendant the only witness on her behalf who testified to the contrary. Their testimony in such particular is in direct conflict; each specifically denying what the other said or did in relation thereto. The court evidently believed the testimony of the secretary of the plaintiff, yet in connection therewith it is to be noted that when the objections were made to the testimony, the court observed, "It looks to me now as if the whole case depends on the objection to the deed, and what the court is thinking about right now is this, whether or not that stock, being a part of the mortgage transaction is not one of the benefits that passed to the one that assumed the mortgage"; from which it appears the court erroneously considered or took the view that the assumption of the mortgage by the plaintiff carried with it or passed title to the shares of stock, but which the plaintiff now concedes was not the case, and admits that the shares of stock were personal property, and that to entitle the plaintiff to the demanded relief it was

essential on its behalf to show that there was an express, definite, and valid agreement between the parties founded upon a valuable consideration whereby the defendant agreed to sell, assign, and deliver the shares of stock to the plaintiff.

The appellant thus first urges that the testimony of any such oral agreement was received in violation of the parol evidence rule. That the deed on its face is a completed contract and the terms and subject-matter thereof fully and completely stated free from uncertainty or ambiguity is not disputed. No claim is made of any fraud, misrepresentation, accident, or mistake of fact in the execution of the deed. The action is not laid nor did it proceed on any such theory. All that also is true and admitted as to the written agreement executed by the parties January 22, 1924, heretofore referred to. The rules of evidence are familiar and not disputed by the respondent that extrinsic evidence is not admissible either to contradict or subtract from, add to or vary, the terms of a written instrument, and that, in the absence of accident, fraud, or mistake of fact, the execution of a contract in writing is deemed to supersede all of the stipulations concerning its terms or subject-matter which preceded or accompanied its execution. 10 R. C. L. 1016. Texts and cases to that effect are cited by the appellant. 1 Elliott on Contracts, 19; 2 Elliott on Contracts, 937; *Bartels* v. *Brain*, 13 Utah 162, 44 P. 715; *Reese Howell Co.* v. *Brown*, 48 Utah 142, 158 P. 684.

While all that is conceded by the respondent, yet in support of the rulings admitting the testimony it is urged by it that the parol evidence rule does not prevent proof of the existence of a separate and independent valid agreement on which the deed is silent and which is not inconsistent with its terms; and that the oral agreement as to the sale and assignment of the shares of stock, conceded to be personal property, was foreign to the deed and not inconsistent with its terms; and that, notwithstanding the recitals in the deed as to the purchase price or con-

sideration having been paid for the conveyance, it was competent by parol to show that such consideration was paid, not only for the conveyance, but also for the shares of stock.

Of course, the parol evidence rule does not prevent proof of the existence of a separate and independent valid agreement oral or written, which is foreign and has no relation to the written contract and not merged therein or superseded by it. The question is, Is the case within such rule? To support the contention that it is, the respondent chiefly cites and relies on the rule stated in 18 C. J. 270, under the heading, "Merger of Previous Agreements." The author says:

"As a general rule a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, and this rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed, all prior proposals and stipulations, and oral agreement, including promises made contemporaneously with the execution of the deed. * * * Where, however, the deed constitutes only a part performance of the preceding contract, other distinct and unperformed provisions of the contract are not merged in it. And where a contract of sale provides for the performance of acts other than the conveyance, it remains in force as to such other acts until full performance. * * * But a person claiming under other representations and agreements than those embodied in the deed must make out his case by clear and certain proofs."

The principal cases cited in support of the text, and which the respondent also cites in support of its contention, are *White* v. *Murray* (D. C.) 218 F. 933; *Lynch* v. *Moser,* 72 Conn. 714, 46 A. 153; *Laflin* v. *Howe,* 112 Ill. 253; *Biewer* v. *Mueller,* 254 Ill. 315, 98 N. E. 548; *Mills* v. *Richmond Company,* 56 Cal. App. 774, 206 P. 486; *Christiansen* v. *Intermountain Ass'n of Credit Men,* 46 Idaho 394, 267 P. 1074; *Van Hee* v. *Rickman,* 109 Or. 357, 220 P. 143.

In all such cases it will be observed there were prior written agreements concerning the sale of real estate and where there were separate and distinct covenants to be performed by the vendor, in addition to the conveyance of the land. In *White* v. *Murray* there was a written contract entered into whereby the receiver of a national bank contracted

to convey to the plaintiff certain premises belonging to the bank, the contract containing a covenant against incumbrances, but the deed executed in performance of the contract was one merely of special warranty without a covenant against incumbrances. It was held that the covenant in the contract did not merge in the deed, so that, on the purchaser losing her title by reason of a pre-existing incumbrance, she was entitled to recover the purchase money in an action on the covenant in the contract. In *Lynch* v. *Moser* the wife mortgaged her separate estate. The husband failed to join in the mortgage deed, for which reason it was claimed the mortgage was void. Thereafter the wife and husband conveyed the land to the defendant, who assumed and agreed to pay the mortgage. It was held that, in an action of foreclosure, the omission of the husband to join his wife in the execution of the mortgage deed did not vitiate it, nor relieve the defendant from his liability on his contract of assumption. In *Laflin* v. *Howe* a written contract was entered into between the parties whereby the plaintiff purchased certain lots at $400 per front foot, and at the same time bought of the vendor buildings on the property claimed to be owned by him. It turned out that one of the buildings for which the vendee paid $1,000 did not belong to the vendor, so that no title passed as to it. It was held that the purchaser could recover the price paid by him for such building in an action for money had and received, notwithstanding the conveyance of the lots by the vendor to the vendee, that the written contract embraced two separate and distinct subjects, one relating to the sale of the lots and the other to the sale of the buildings on a part of the lots, and that a performance as to one of the subjects did not supersede the agreement as to the other. In *Biewer* v. *Mueller* there was a written agreement to exchange real properties, and it was held that, where the hotel property in possession of a manager was traded by the owner who represented to the purchaser that the manager had no interest or claim in the property, the purchaser need not deliver possession of his own property

until he was put in peaceable possession of the hotel; and that the owner of the hotel was bound to put the purchaser in immediate peaceable possession, and, upon his failure to do so, the purchaser, who had not surrendered possession of his own property or exercised any acts of ownership over the hotel, could rescind the contract, notwithstanding the execution of the deed. In *Mills* v. *Richmond Company* the vendor by a written contract agreed to convey certain lots to the purchaser and also therein agreed to grade the street and place sidewalks in front of the lots sold. The premises by deed were conveyed to the purchaser. The vendor refused to grade the street and comply with his contract in such particular. The plaintiff brought an action against the defendant for a rescission of the contract. The case went off on a demurrer sustained to the complaint. The District Court of Appeals reversed the judgment and remanded the case. In *Christiansen* v. *Intermountain Ass'n of Credit Men* there again was a written agreement whereby the vendor agreed to convey the premises and also agreed to furnish an abstract of title to the property showing the same to be clear of liens and incumbrances. The deed was executed at the time the contract was made. Not anything was contained in the deed concerning an abstract of title. The vendor refused to furnish an abstract. The vendee thereupon procured one at an expense of $50, and discovered that there were tax liens on the property amounting to $176 which he paid, and then brought an action against the vendor for the reasonable value of the abstract and the taxes paid, and was permitted to recover therefor. *Van Hee* v. *Rickman* is similar to the case of *Mills* v. *Richmond Company*.

We are of the opinion that the case in hand does not come within the principles announced in such cases. The cited text and cases deal with the question of merger and not with the parol evidence rule. In none of them was the party seeking relief required by parol to show the existence of the contract relied on. They were all written contracts in which it was

held they contained separate and distinct subject-matters, and that the performance of the one did not relieve the vendor from the performance of the other. The case here is one where the vendee was permitted by parol to show that the vendor not only agreed to sell the described premises, but also orally agreed to sell and deliver 66 shares of stock, personal property, and thus add an additional and new subject-matter to the sale; and is not unlike permitting a vendee by parol to show that the vendor, in addition to a sale of the real estate as evidenced by the deed of conveyance, also at the same time and as a part of the same transaction and for the same consideration agreed to sell an automobile, or say several hundred head of sheep, or valuable shares of mining or other industrial stocks, which, if permitted, would destroy the efficacy of written contracts and render the execution of them useless.

In such connection it also is urged that the consideration expressed in the deed, $18,400 in cash and the assumption of the $6,600 mortgage specifically stated to be the consideration for the conveyance of the described real estate, was not conclusive, and that parol evidence was admissible to show the real consideration, and that the consideration therein expressed was not only for the conveyance of the real estate, but also for the sale and delivery of the shares of stock. It again is familiar doctrine that as a general rule recitals in a deed or other written instruments as to the consideration are not conclusive, and that in some cases it is competent to inquire into the consideration and show by parol or other extrinsic evidence what the real consideration was; and that it may be shown the consideration in fact was greater than that expressed in the instrument, or that there was some other consideration in addition to that set forth, especially where the stated consideration was merely nominal. 22 C. J. 1157. The application of such doctrine does not help the respondent, for on page 1169 the author further says that, where the effect of parol evidence contradicting the consideration expressed in

the instrument or showing the true consideration to be different therefrom would be to change or defeat the legal operation and effect of the instrument, or to add new matter to an agreement complete upon its face, the evidence is not admissible, for in such case, says the author, it comes within the rule which forbids the introduction of parol evidence to vary, contradict, or defeat the terms of a written instrument. Many cases are cited in support thereof. The proposition is well put in 4 Jones' Commentaries on Evidence (2d Ed.) 2854, that, "if the consideration stated appears as a clear and unambiguous statement of part of the agreement, representing an actual contractual term and something more than a mere formal requisite, such a term of the contract must be regarded in the same light as any other material term of the contract and extrinsic evidence to vary or contradict it is inadmissible," and that "a party cannot, under the guise of varying the consideration, ingraft new terms and covenants upon the writing by extrinsic evidence." To that effect is also Page on the Law of Contracts, vol. 4, § 2164.

We thus are of the opinion that the parol evidence with respect to the deed was improperly admitted. For more cogent reasons was the parol evidence rule violated with respect to the contract entered into January 22, 1924. Admittedly what the parties in such particular negotiated was the claim of the defendant for supplies, wares, and merchandise furnished the plaintiff after it had taken possession of the real estate, and that the moneys paid, $680.55, were paid in settlement of such claim and for nothing else. The written contract and the itemized bill attached thereto clearly show that. To permit parol evidence to show that such payment was made also as a consideration for the shares of stock is to add new matter to an agreement complete upon its face. The shares of stock did not enter into the negotiations of the parties in arriving at a settlement of $680.55 to be paid the defendant for her claims. And, according to the testimony of the secretary of the plain-

tiff, that in arriving at such settlement and in reaching the agreement to pay the defendant $680.55, no mention was made of the shares of stock, until after the written contract was prepared and read by him. Thereupon he stated he had forgotten to make mention of the shares of stock and stated to the defendant, "You know this stock belongs to the company," and that she said, "I know it does," and that she would send it when she got back to Grantsville. Under such circumstances the consideration of $680.55 represented an actual and material term of the written contract, and to permit the plaintiff by parol to show that such consideration was paid not only in payment of the defendant's claims, but also for an assignment and transfer of the shares of stock, amounted to the ingrafting of new matter upon the written contract in violation of the parol evidence rule.

However, should we be in error as to all this, we further are of the opinion that the action was barred. It is urged by the appellant, and it is conceded by the respondent, that the action was required to be commenced within four years after the cause of action accrued. "It is a rule of universal application," said this court in the case of *Sweetser* v. *Fox*, 43 Utah 40, at page 48, 134 P. 599, 602, 47 L. R. A. (N. S.) 145, Ann. Cas. 1916C, 620, "that a cause or right of action arises the moment an action may be maintained to enforce it and that the statute of limitations is then set in motion." The same doctrine is stated in 17 R. C. L. 748, § 116. It also is well recognized that, where an agreement is absolute and unconditional, the general rule is that no demand for performance is necessary before action may be brought thereon. 13 C. J. 660, § 740. All that is conceded by the respondent. Accepting the testimony of the secretary of the plaintiff that several days before the deed was made on October 9, 1922, the defendant orally agreed to assign and transfer the shares of stock to plaintiff, that the assignment and transfer in effect were to be made contemporaneously with the execution of the deed—to be assigned and transferred "at once" as testified to by him

—yet more than five years and three months elapsed before the action on January 11, 1928, was commenced. The oral agreement as testified to by him as far as it went was absolute and unconditional. No demand for performance was necessary before action could be brought thereon. Not anything is pleaded or testified to, to show that an action could not have been brought immediately, at least within a few days or a few weeks, after the execution of the deed and upon the failure of the defendant to assign and transfer the shares. The secretary of the plaintiff testified that,

"I spoke to Mrs. Erickson a number of times about the transfer of this stock at Mr. Dunlap's request but she kept putting it off. Nothing was said at the time the deed was drawn as to the date, but the understanding was that she would transfer it at once."

The respondent argues that "at once" means a reasonable time, and that a year and three months in which to perform was a reasonable time. The trial court in effect so found. We cannot approve such a finding. It is unsupported by, and is against, the evidence. Texts (37 Cyc. 181) and authorities are cited by the respondent that a delivery to be made, "immediately," or "at once," must be made without delay, or as promptly as the circumstances will permit, "that is to say, the delivery must be made within a reasonable time." The cited authorities deal with a matter of a few days, or a few weeks, depending on distance and time of transportation, or custom or usage of the trade, the production or manufacture of the articles to be delivered, or upon other similar conditions or circumstances. Such authorities do not help the respondent, nor do they tend to illustrate that a year and three months in which to assign or transfer the shares of stock was in law or in fact a reasonable time for performance. The certificate of the shares was in the possession of the defendant at Grantsville. Confessedly she was the absolute owner of it. Not anything is made to appear that the certificate with but reasonable efforts could not have been endorsed and a receipt therefor issued and delivered without any substantial delay, and hence a failure to do so put the statute in motion.

Nor is the contention of the respondent tenable that, since the defendant as testified to by the secretary of the plaintiff recognized the existence of the oral agreement, and did not disclaim or "repudiate" it until shortly after January 22, 1924 (about twenty days before the statutory period had run before the action was brought), the cause of action did not arise until such disclaimer or repudiation. If the shares were to be transferred contemporaneously with the execution of the deed and when the full payment of the purchase price was made, then whether the defendant had or had not thereafter recognized the contract, or had or had not repudiated it until a year and three months thereafter, such fact, in the absence of allegations or proof of fraud or deceit misleading the plaintiff, did not toll the running of the statute, nor prevent the plaintiff from enforcing the contract upon her failure to assign and transfer the stock as testified to by the secretary of the plaintiff.

In that connection it also is urged that the defendant August 10, 1923, gave a check to the plaintiff or to Dunlap for a dividend on the stock received by her. Such circumstance was alleged and put in evidence by the plaintiff, not as an estoppel, but in recognition of the oral agreement testified to by the secretary of the plaintiff and as corroborating his testimony in such respect. The defendant testified such dividend payment was sent the plaintiff, not because of any agreement to assign or transfer the shares of stock, but as she testified, "I was just put in as secretary (of the association). I think that they were going to assume the loan and that it went with the loan. That is the way I expected. Then I got to thinking that they hadn't paid me for the stock and that it was personal property and that it belonged to me." She further testified that, after she had more experience, she "learned that the stock is not attached to the loan according to our practice and I have transferred several since and some transferred the stock with the loan and some kept the stock. That is the way we have been

doing." Not anything is made to appear that any other dividend on the stock was paid or sent to the plaintiff.

But further as to all this. The Federal Farm Loan Board, charged with the administration of the Federal Farm Loan Act (see 12 USCA § 641 et seq.), among other things ruled that *"in a case where the purchaser acquires the stock interest* and is by law ineligible to membership in the association * * * the seller should assign to the purchaser his stock receipt and right thereunder," and that the secretary-treasurer should note the same on his stock register and advise the bank of the transfer of the land. The plaintiff, being a corporation, was "ineligible to membership in the association," but in purchasing lands incumbered by mortgage from the selling owner it by an express agreement with him could also acquire the stock interests. The Federal Land Bank of Berkeley, among other things, adopted regulations and gave instructions that "the stock certificate is always retained by the secretary-treasurer at the local National Farm Loan Association, he issuing to the owner of the stock a receipt to the purchaser who must deliver it to the secretary-treasurer or to the land bank, before a new certificate in the name of the new owner can be issued," and that "a corporation purchasing the mortgaged property from the owner of the land *may, when taking title to the land, also acquire by agreement with the selling owner, the association stock that is connected with the loan. In such case, the selling owner assigns to the purchasing corporation the receipt relating to the stock certificate."* (Italics added.)

It is thus seen that the plaintiff by purchasing the mortgaged property and assuming the mortgage acquired no right, title, or interest in the stock, except by an agreement with the selling owner, the defendant. However, at the conclusion and submission of the case for decision, the trial court, still entertaining the same erroneous view entertained by him when objections were made and overruled to the proposed testimony as to the oral agreement and in announcing his views that the plaintiff was entitled to prevail and

directing counsel for the plaintiff to prepare findings, stated that the plaintiff on assuming the mortgage "by operation of law became the equitable owner of the stock in the association. The stock was an integral and inseparable part of the subject matter. * * * The legal and actual situation in this case is that the stock passed with the assumption of the mortgage unless there was an agreement to the contrary. The grantee assumed and agreed to pay the mortgage." Such position or view of course is untenable, and, as is seen, is in conflict with the rules and regulations of the Federal Farm Land Board and of the Federal Land Bank of Berkeley, and may well have influenced the conclusions and judgment of the court that the defendant by indorsement or other proper writing was required to assign and deliver the receipt of the stock certificate to the plaintiff. While the trial court found that the defendant had "promised and agreed" to assign and transfer the stock to the plaintiff, yet by other portions of the findings it is indicated that the conclusion at least partly also was reached that the plaintiff became the owner of the stock because of its assumption of the mortgage. Whatever views the plaintiff to sustain its cause may have urged before the trial court, it neither by its complaint nor in the presentation of the cause on appeal adopted or maintained the view that it became the equitable or legal owner of the stock in virtue of its assumption of the mortgage. On the contrary, it pursued the theory that the stock, being personal property and owned by the defendant, did not pass with the deed of conveyance nor by the assumption of the mortgage, and that to entitle the plaintiff to prevail it was essential to show an agreement between it and the defendant founded upon a valuable consideration to assign and transfer the certificate of stock to the plaintiff.

Shortly after the bank at Berkeley, the holder of the mortgage, was notified that the plaintiff had purchased the land and assumed payment of the mortgage, the bank on October 25, 1922, sent to the defendant as the secretary-treasurer of the local association, transfer notices to be filled out and

signed by the plaintiff "showing the conditions in connection with your loan." The bank further informed her that, "in a case where the purchaser acquires the stock interest, and is by law ineligible to membership in the association * * * the seller should assign to the purchaser his stock receipt and rights thereunder," and that the secretary-treasurer should make note of the same on his stock register and advise the bank of the transfer of the land.

Such transfer notice and assumption of the mortgage were by the defendant sent to the plaintiff to be signed by it and forwarded to the bank, but which were not executed by the plaintiff until October 18, 1924. Considerable correspondence took place between the bank and the plaintiff and between the bank and the defendant with respect to the transfer notice and written assumption of the mortgage to be so sent to the bank at Berkeley. From such correspondence it is fairly evident that the plaintiff delayed executing such papers until the defendant gave it a receipt or other evidence of an assignment of the shares of stock. The plaintiff solicited and sought the aid of thhe bank to advise the defendant to make an assignment of the stock to the plaintiff. On May 29, 1923, the bank sent the defendant "proper forms partly filled out to take care of the formal transfer of the above loan and stock interest." Therein she was advised that the purchaser "should sign and acknowledge before a notary public the form for the assumption of the mortgage," and that "the vendor of the property covered by our mortgage should surrender his receipt for stock in the association to be cancelled with his certificate when a new certificate and receipt are issued in favor of the new member," and that the receipt should bear an indorsement that "for value received, I hereby sell, assign and transfer all my right, title and interest in and to the within described stock to the Last Chance Ranch Company." Of course, all that was upon the assumption that the plaintiff "by an agreement with the selling owner" had acquired such interest in the shares of stock. The defendant declined to

execute such a document. Inquiries were made by the bank as to the status of the situation with respect to the execution of the transfer notice and assumption of the mortgage. The defendant informed the bank that the papers had been submitted to the plaintiff for execution, and that it, for various reasons, had refused to sign them, and requested the bank to communicate direct with the attorney for the plaintiff. On November 2, 1923, the bank wrote the attorney that it was informed by the defendant that the plaintiff did not wish to sign the papers, as they were made out to the Last Chance Ranch Company. The bank further stated that the necessary papers for a formal transfer of the loan were sent to the defendant on May 29, 1923, "but as yet no apparent action has been taken toward their completion." On November 9, 1923, the bank wrote the defendant again calling her attention to the rules and regulations heretofore referred to, reminded her that on May 29 there was forwarded to her an assumption of the mortgage form, and among other things stated that "you will keep a record in your assessment stock book to show that the stock in connection with this loan *is now owned by the Last Chance Ranch Company, a corporation.*" (Italics added.) In that the bank, perhaps inadvertently, rather exceeded its prerogative, for the rules and regulations provided, and the bank so notified the defendant, that such a notation was required or permitted only in the event the purchaser by "agreement with the selling owner" had acquired such interest in the stock. But the defendant was not misled thereby, and declined to follow the direction. A copy of that letter was on the same day by the bank forwarded to the plaintiff, inclosing a transfer notice direct to it to be filled out and signed "showing the details of the transaction."

On November 14, 1923, the attorney for the plaintiff wrote the defendant, stating:

"I am trying to straighten out the transfer of stock from you in the Federal Land Bank to the Last Chance Ranch Company and to that end I am in correspondence with the Federal Land Bank at

Berkeley. They instruct me as follows: 'If a borrower disposes of his land which is subject to a Federal Land Bank Mortgage to an owner who is by law ineligible to a membership in the association, the borrower should endorse the receipt for and the certificate of stock and deliver the receipt to the new owner.' In view of the above quoted instructions we would thank you to endorse your receipt for the certificate of stock and forward to me as secretary of the Last Chance Ranch Company."

Here again the duty of the borrower disposing of the land to indorse the receipt and the certificate of stock and deliver the receipt to the new owner is stated too broadly, for the borrower was not required to do so, except upon an agreement between the selling owner and the purchaser, all of which the plaintiff well knew. But again the defendant was not misled thereby, and declined to comply with the request.

More than four years elapsed from the time the plaintiff wrote the above letter until the commencement of the action. For six months or more prior thereto it had solicited the aid of the bank to induce the defendant to assign and transfer the stock to the plaintiff. The bank, of course, was interested in and insisted that a proper notice of transfer and assumption of the mortgage be executed by the plaintiff. It may be that, upon representations made by the plaintiff that it was the owner of the stock, the bank advised the assignment and transfer of it by the defendant to the plaintiff. However, the secretary of the bank and the custodian of its books, records, and files, a witness called by the plaintiff, testified that the defendant had purchased the 66 shares in question, paying $5 a share therefor, and that there was not anything in the files anywhere of any statement by her that she had sold the stock to the Last Chance Ranch Company; and that there was not anything in the records or files or correspondence of any statement by any one that she had received any consideration or anything for the stock from the Last Chance Ranch Company or anybody connected with it. The witness further testified

that later the bank wrote the plaintiff that "it is not within the province of this bank to insist upon the sale of association stock, but we trust the letter we have written will aid in bringing about the desired result. It is the privilege of the owner of such stock to retain the same until the mortgage is fully paid, and in the absence of an instruction sheet stating that the selling owner agrees to transfer the stock and signed by the owner, it is difficult to insist upon the transfer." When the bank was informed that the defendant was threatened with a lawsuit, it wrote her that "as you doubtless know, this stock is personal property and is not necessarily transferred with the land—that being a matter to be decided between the selling owner and the purchaser. In this particular instance the correspondence shows that while the Last Chance Ranch Company contended that you promised to transfer the stock to them, you stated that you had not. There is nothing that this bank can do, however. It is up to the Last Chance Ranch Company to prove that you did agree to transfer the stock. You should, of course, defend any action brought by them and we suggest that you get the advice of a competent local attorney."

Not until October 18, 1924, more than two years after the execution of the deed of conveyance, did the plaintiff execute and deliver an assumption of the mortgage to the bank and then executed one with all words and statements stricken with reference to the stock and stock interest and the statement that "the undersigned have purchased 66 shares of stock, par value $335.00, which accompany this loan," which transfer of loan and assumption of the mortgage was certified to by the defendant as the secretary-treasurer of the association, but with the words and statements stricken, that "the secretary-treasurer is hereby instructed to take up the receipt for stock in this association held by the former member and to cancel the certificate it represents and issue in its stead a certificate in the name of the new member," and with the further language and statement stricken: "I further certify that the stock certificate for 66 shares hav-

ing to do with said loan has been duly assigned to the above named purchaser and will be cancelled and a new certificate and receipt issued upon receipt of notice from the bank of the approval of the transfer of said loan." The transfer of loan and assumption of mortgage so executed by the plaintiff was approved by the bank.

When the plaintiff executed and delivered such transfer of the loan and assumption of the mortgage, it then, and for more than a year and a half, well knew that the defendant had failed and refused to assign and transfer the shares of stock to the plaintiff, during which time it, with the solicitation and assistance of the bank, was unable to obtain any assignment or transfer. On the record and from the correspondence it is evident that the plaintiff delayed executing the transfer of the loan and assumption of the mortgage, notwithstanding the demand and request of the bank that such papers be executed and completed, in the hope that the defendant could be induced to assign and transfer the shares of stock to the plaintiff. In fact, the plaintiff wrote the bank to that effect. But, notwithstanding the execution and delivery of the transfer of loan and assumption of the mortgage wherein all reference of ownership and interest of the plaintiff in the stock had been stricken, the plaintiff thereafter still demanded from the defendant an assignment and transfer of the stock, with which demands the defendant refused to comply.

Thus, considering the case from the viewpoint as alleged in the complaint, and as testified to by the secretary of the plaintiff, that the defendant contemporaneously with the execution of the deed orally agreed to assign and transfer the shares of stock, it is clear that the action is barred, for, as indicated and as shown by the correspondence, the plaintiff for more than four years prior to the commencement of the action knew that the defendant had declined to assign the stock to the plaintiff, and at all times since the execution of the deed knew that the defendant had failed to make

an assignment or transfer and that none in fact had been made. However, to ward off the plea of the statute of limitions, the plaintiff urges that the promise, made by the defendant January 22, 1924, when the settlement was made for the supplies and merchandise furnished the plaintiff, was a fresh agreement made about twenty days before the statutory period had run. As already indicated, the consideration of $680.55 then paid was paid in payment of such claims of the defendant. Whatever else on this record may be doubtful, that fact is free from doubt. There thus was no consideration for such promise and agreement, and hence were rendered a nudum pactum and unenforceable. 1 Elliott on Contracts, 442; 13 C. J. 312.

There is still a further question involved. The case, being for specific performance—it is so denominated by the plaintiff—is one in equity. The appeal is from questions of both law and fact, in which case on proper assignments we may review the record both as to the facts and the law. The general rule is that specific performance will not be decreed where the subject-matter of the contract is personal property, since ordinarily there is an adequate remedy at law as in the case of damages for breach of contract, and will be decreed only when there is no adequate remedy at law. 58 C. J. 1032, § 244 et seq. There must be acts of such nature that the plaintiff cannot be replaced in his original position or adequately compensated by damages, and that payment of the purchase price money is no ground for specific performance. Pomeroy on Specific Performance (3d Ed.) §§ 99, 106, and 112. Says the author at section 99:

"All the conditions upon which the right to the equitable relief is based must be fulfilled, when the agreement is verbal as much as when it is written, for the mere absence of a written memorandum does not of itself let in the equitable jurisdiction; for, otherwise, all contracts might be enforced in equity if they were unwritten. The contract, therefore, must be one for which the legal remedy of damages would be inadequate or impracticable, and for which the equitable remedy of specific execution is possible."

The action here is against the defendant personally, based on the ground that, when she sold the land to the plaintiff, she agreed to assign and deliver to the plaintiff 66 shares of the capital stock of the local association, personal property admittedly owned by her, which agreement she failed and refused to perform. That is the very foundation of the action. Without it plaintiff's cause falls to the ground. The judgment is that she, as the owner of the stock, be required to assign and deliver it to the plaintiff. Unless the plaintiff in equity was entitled to specific performance of the oral agreement testified to, no relief of equitable cognizance arose. Neither by allegations nor proof is there anything, except as to the oral agreement and the failure or refusal of the defendant to perform it on her part.

In the next place, to justify a decree of specific performance of an oral agreement—none other was testified to—requires proof of a clear, satisfactory, and convincing character of the existence of the agreement with certainty and definiteness of its terms, founded upon a good and valuable consideration, and ordinarily a showing of part performance. Though full credence and weight be given the testimony of the secretary of the plaintiff, yet it is doubtful whether his testimony met such requirements.

From what has been thus considered and said, it follows that the findings of the trial court in the particulars indicated are disapproved, the judgment reversed, and the case remanded to the district court, with directions to set the judgment aside, make findings and conclusions in accordance with the views herein expressed, and enter a judgment dismissing the action. Costs to the appellant.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.