## AMERICA SCALE MFG. CO. v. ZEE.

No. 7529.   Decided September 11, 1951.   (235 P. 2d 361.)

See 55 C. J. S., Sales, sec. 129. Contracts based on fraud, rescission of. 24 Am. Jur., Fraud and deceit, secs. 195 et seq.

*Warwick C. Lamoreaux, Horace C. Beck, H. A. Smith,* Salt Lake City, for appellant.

*D. A. Skeen, Verl C. Ritchie,* Salt Lake City, for respondent.

COWLEY, District Judge.

Plaintiff brought this suit in claim and delivery to recover 19 coin operated weighing scales which plaintiff sold to the defendant under a title-retaining contract. In the alternative, plaintiff prayed for the value of said scales in the sum of $2,328.45 in the event possession could not be had.

Defendant answered and counterclaimed asking for rescission of the contract on the grounds of fraud; that defendant be granted judgment of $837.90, together with interest, and thereupon the defendant would redeliver the scales to the plaintiff. The sum of $837.90 represents the down payment the defendant made to the plaintiff at the time the written contract was entered into by the parties.

The fraud alleged by the defendant in his answer and counterclaim and relied on by him was to the effect that plaintiff's agent who sold the scales to the defendant induced him to buy said scales as a result of the agent's representation that he was to receive the exclusive agency for three western states as plaintiff's sales representative. The alleged exclusive agency contract was to be reduced to writing on a separate form than the title retaining sales contract and mailed to defendant within two weeks. Defendant does not contend that the 19 scales were not as represented, so the matter of their quality and suitability is not in issue. Defendant did not receive the alleged territorial contract and therefore refused to make the installment payments on the 19 scales as provided in said contract.

The material facts are these: Defendant operates a motel in Salt Lake City and during the middle of August, 1947, plaintiff's sales agent, one Charlie Grote, stayed at defendant's motel for about four days. Mr. Grote was traveling by automobile but had with him the 19 scales in question on a truck with separate driver. Mr. Grote interested the defendant in the scales and after two days negotiation defendant signed the contract on the third day and received the scales. He made a down payment of $837.90 and was to pay the balance in monthly installments.

During the two day period of negotiation, the agent promised to appoint defendant the Company's exclusive sales representative for the three western states of Utah, Idaho and Nevada. At the time defendant signed the contract for the purchase of the 19 scales he protested that nothing was said about the territorial rights and Grote informed him that such a contract had to be on a separate form which he did not have with him but would sent it from Colorado within two weeks. Mr. Grote made his headqarters in Florida but was enroute to Colorado. The Company's main office is Washington, D. C. Defendant still insisted that Grote give him something in writing on the promised territorial rights until he received the regular

form contract. Mr. Grote then presented defendant with a printed card which represented him as Vice President of plaintiff company and reminded defendant that they belonged to the same fraternal organization. Defendant then agreed to allow the agent two weeks time in which to send the territorial contract and thereupon signed the contract for the 19 scales and received possession of them. Agent Grote was not the vice president of plaintiff company and had never held any office with said company other than his position as salesman. The printed card therefore was a deliberate misrepresentation but it is probable that Grote and defendant were members of the same fraternal organization. Furthermore, the agent did not have the authority to grant defendant the exclusive agency defendant contends was promised. Defendant did not receive from Mr. Grote or the plaintiff the alleged territorial contract, and therefore, according to him, did not make the monthly installment payments on the 19 scales, and this suit resulted.

The lower court held

"That plaintiff did not make any misrepresentations or fraudulent representations to the defendant, as alleged in defendant's answer and counterclaim, or at all"

and rendered judgment for the plaintiff as prayed. The case was tried before the court without a jury. Defendant prosecuted this appeal.

Defendant assigns this finding as error and contends that the issue of fraud as alleged in his answer and counterclaim was proven by clear and convincing evidence and asks for a reversal.

The only witness called to testify on the issue of fraud was the defendant Zee himself and his testimony stands on the record uncontradicted. Plaintiff's agent, Charlie Grote, did not appear as a witness at the trial, nor was his deposition taken. He had left the employ of the plaintiff a few months before trial and was not available, although

he was in plaintiff's employ for some two years after this transaction was entered into and for about six months after the answer and counterclaim were filed raising the fraudulent inducement issue, so plaintiff could have made the agent available or at least his testimony available by deposition had plaintiff deemed it necessary. Plaintiff, however, chose to rely solely on the written contract for the sale of the 19 scales as the entire contract or transaction and exclude testimony on the fraudulent issue as immaterial. Plaintiff objected to such testimony but was properly overruled by the court. The deposition of the president of plaintiff company was received in evidence but it merely established plaintiff's cause of action under the written contract for the return of the 19 scales.

The summary of the facts outlined in this decision bearing upon the issue of fraud is taken from the testimony of defendant Zee. As stated, there was no testimony in opposition to it.

At the conclusion of the case, the trial judge rendered an oral decision from the bench wherein he said:

"You may take this on the record, Miss Reporter: I don't disagree with the contention of the defendant, that, if the evidence were clear and convincing that the contract Exhibit A was induced by a fraudulent misrepresentation of existing material facts, which—except for which the defendant would not have entered into the contract, that the defendant might have avoided the contract by making such proof, but I'm not able to say that this evidence so appeals to my mind in a clear and convincing way, such as to preponderate in favor of the defendant or his affirmative defense, and, as I have heretofore indicated, Mr. Zee is a man of intelligence and business acumen, and if he made this mistake in failing to have that contract or some evidence of his agreement in writing, and went ahead and signed this other contract, that was his error, and we find ourselves in a situation here with respect to the efidence, that we are not able to say that it convinces me of the facts necessary for the defense, and I—my analysis of it leads me to the conclusion, and under the facts and the law as I understand them, it is necessary to bind Mr. Zee on this contract that he signed, and so the judgment will be in favor of the plaintiff and against the defendant, and such will be the order."

From this oral decision, we agree with the trial judge in his interpretation of the law, but apparently he did not believe that the affirmative defense and counterclaim had been established by clear and convincing evidence as required by law to establish an issue of fraud and misrepresentation.

Defendant's testimony on the issue of fraud pertaining to the second contract for certain territorial rights which plaintiff's agent promised to send defendant within two weeks is positive and uncontradicted if it is worthy of belief.

This brings us to the determinative question of this appeal. Should defendant Zee's positive and uncontradicted testimony be believed or should it be disregarded or viewed with suspicion?

We recognize the fact that the trial judge is in a better position to observe the manner and demeanor and adjudge the credibility of a witness than we are and we recognize the law that the trial judge can disbelieve a witness in part or entirely under certain circumstances.

Our specific problem is, however, under what circumstances can the trial judge disbelieve the positive and uncontradicted testimony of a witness on a given subject when there is no other evidence whatever on the same subject.

The general rule as to the effect of positive uncontradicted evidence is found in *National Bank of Commerce of N. Y.* v. *Bottolfson,* 55 S. D. 196, 225 N. W. 385, 386, 69 A. L. R. 892, wherein the court said:

"Where the testimony of a witness is uncontradicted and not inherently improbable, and there are no circumstances tending to raise a doubt of its truth, the facts so proven should be taken as conclusively established and verdict directed or decision entered accordingly."

Apparently, in the case at bar the trial judge felt there was such an inherent improbability in the truth of defen-

dant's testimony or that there were other circumstances tending to raise a doubt of its truth that he was justified in discrediting his whole story and disregarding his testimony.

An example of uncontradicted evidence which the court found to be inherently improbable is found in *Quock Ting* v. *United States,* 140 U. S. 417, 11 S. Ct. 733, 734, 35 L. Ed. 501. In this case a Chinese boy had been picked up by the U. S. Immigration authorities and was before the court on habeas corpus. The only testimony of his alleged citizenship was that he had been born and lived in San Francisco for 10 years, then went to China. He testified as to the place where he was born but knew nothing else of his 10-year stay in America, not even knowing any English words, nor how to count. The court held against him, disregarding his uncontradicted testimony, saying as follows:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story."

Did defendant Zee's testimony fall under the exception to the general rule as did Quock Ting's in the above cited case? Was Zee's testimony inherently improbable? Are there any circumstances tending to raise a doubt of its truth?

According to defendant's testimony, Mr. Grote was interested in finding an agent to represent plaintiff company on an exclusive basis in the states of Utah, Idaho and Nevada, and when he found and appointed such a person he would sell the 19 scales to him. When defendant was about to sign the contract for the 19 scales, he protested

that nothing therein was stated about the Agency for the territory. He insisted upon something in writing and only agreed to wait two weeks for the territorial contract after the agent had made certain excuses about not having the right form with him, and after presenting the card which falsely represented him as vice president, and pointing out that the word of a fraternity brother should be trusted.

The idea of an exclusive agency for three states and the disposition of the 19 scales to the newly appointed agent seems reasonable of belief to us and particularly where as here a penny coin operated weighing scale such as you see in retail stores is involved. A territory of considerable size and exclusive of competition from the same company would be required to make the venture profitable. A three state exclusive territory would not be unreasonable. On the other hand, it is less reasonable to believe that defendants would have been interested in the 19 scales without the additional consideration of territory.

Another reason why we think defendant's testimony should have been given *credit* by the trial judge is that during the interim between the time the sales contract was signed and the commencement of this law suit certain correspondence which was received in evidence took place between the defendant and Mr. Dillon, president of plaintiff company, and defendant and Mr. Grote, wherein defendant lodged his complaint that he had not received his promised territorial contract. In this correspondence, both Mr. Dillon and particularly Mr. Grote do not either admit or deny defendant's claim to a territorial contract, but completely ignore it.

It is also significant in this case that the only questions asked defendant by plaintiff's attorney on cross-examination went to the mechanical fitness and suitability of the 19 scales of which there was no issue, so plaintiff did not choose to question defendant on the issue of fraudulent inducement and defendant's testimony stands unimpeached.

The only argument that might be advanced in an attempt to lessen the probability of truth of defendant's testimony is that he was the owner and operator of two motels and there is no indication in the record that he intended to release his time in the operation of said business to devote his time to the sales of plaintiff's scales. This idea points up the possibility that defendant thought he was going to make some easy money. However, the agent's technique in succeeding in selling the 19 scales to defendant equally impresses one that he was picturing an easy money inducement to defendant by the territory offer as a means of disposing of the scales in question and moving on his way, so to our minds this argument does not lessen the probability of truth of defendant's testimony on the territory claim.

Plaintiff's counsel points out in his brief that the defendant could have had the Agency for the three states in question on a non-exclusive basis. In the deposition of Mr. Dillon, the president of plaintiff company, he testifies that he wrote to their agent, Grote, who was then in Florida that it would be all right for defendant to have a non-exclusive agency for the three states, but this offer was never conveyed to Mr. Zee by either Mr. Dillon or Mr. Grote. So in fact Mr. Zee did not receive a territorial offer or contract of any kind from plaintiff or the agent.

After examining the record closely, we cannot find any circumstances that would raise a doubt as to the truth of defendant's testimony. It seems reasonable and consistent with truth to use. We hold, therefore, that defendant's testimony was clear and convincing in support of his answer and counterclaim.

Plaintiff in addition to contending that defendant failed to prove by clear and convincing evidence the issue of fraud, urges on this appeal that defendant failed to prove all of the nine elements of fraud as outlined in this Court's decision in the case of *Stuck* v. *Delta Land & Water Co.,* 63 Utah 495, 227 P. 791, and particularly urges

that defendant had no right to rely upon the agent's representation as to his position of vice president and alleged authority which turned out to be limited. We do not deem it necessary to restate these nine elements but suffice it to say that the nine elements are present in the case at bar including defendant's right to rely upon the agent's representations inasmuch as we have found that defendant's testimony was worthy of belief.

Plaintiff also contended that the title-retaining contract sued upon was an independent contract, claiming that the alleged territorial contract had no relation to the sales contract, and that said sales contract superseded all stipulations concerning its terms or subject matter and ▪ is binding upon the parties, in the absence of accident, fraud, or mistake, and cites *Last Chance Ranch Co.* v. *Erickson* 82 Utah 475, 25 P. 2d 952. Again plaintiff's position would be correct if defendant's testimony were unworthy of belief and could be disregarded, but in view of our interpretation of defendant's testimony the alleged territorial contract was related to and was the inducement for the sales contract and, therefore, the latter contract is subject to cancellation as a result of our finding on the issue of fraud.

The case is reversed with instructions to the lower court to correct its findings and conclusions of law in conformity with this opinion and enter judgment for the defendant on his counterclaim as prayed. Costs to defendant, appellant.

WADE, J., concurs.

CROCKETT, J., did not participate.

HENRIOD, Justice.

I concur. The record conclusively shows that plaintiff's agent, by the device of a printed calling card, represented that he was vice president of the plaintiff company, ad-

mittedly a false representation. A man who will misrepresent once will repeat, and in this case such fact would seem to lend strength to defendant's uncontradicted testimony. To disregard such testimony seems to the writer to ignore the presumption that people generally tell the truth, and places a premium on plaintiff's misrepresentation.

WOLFE, Chief Justice.

I dissent.

In this decision, we clash head-on with two principles of law repeatedly announced by this court. The first, that fraud or misrepresentation must be proved by clear and convincing evidence; the second, that the trier of the fact is the sole judge of the credibility of the witness and is in a better position to determine wherein lies the truth.

The appellant admitted the execution of the contract and sought to have it cancelled because of false and fraudulent representations on the part of respondent's agent. In order to succeed, it was necessary that he establish the claimed fraud or misrepresentation by clear and convincing evidence. The trial judge, after observing appellant on the witness stand and hearing and evaluating his testimony, concluded that the evidence was such that it did not clearly convince him that appellant had been defrauded. This court reverses the judgment of the trial court and in so doing merely substitutes its judgment as to the quality of the evidence without any weight to the advantages possessed by the judge who observed the only witness.

The appellant was the sole witness who testified, and so his testimony was not denied. But there are some facts and circumstances which cast doubt upon his version of the transaction. Apparently, these, together with appellant's interest and demeanor on the witness stand, caused the trial judge to refuse to accept his explanation.

The facts and circumstances which, I believe, might have influenced the trial judge are these: Appellant was a busi-

ness man of many years of experience. He signed a written contract which provided what is usual in many contracts obtained by agents, that the respondent was not bound by any representations or promises made by any salesman or agent relative to the transaction which were not embodied in the written contract. This contract was executed after the dates of the conversations related by appellant and should have been understood by him. The exclusive agency contract, claimed by appellant, is indefinite and uncertain with respect to certain terms, and was unlimited as to time. It said nothing about territorial rights which appellant knew because he protested the absence of said provision. The trial court may have believed that the testimony of Zee that he was to receive an exclusive agency for four states in a promised future separate contract was inherently improbable as appellant was in the motel business and this venture would be a side line. The claimed contract was far more generous than one would reasonably expect, as it allowed appellant a commission on every sale in three states regardless of who made the sale and without any requirement that appellant devote any amount of time to developing the territory.

In addition to appellant's claim of a most unusual contract, his subsequent acts, conduct, and correspondence might lead the trial court to believe the exclusive agency contract might have been discussed but never fully agreed upon. The sales contract was entered into on the 16th day of August, 1947, and the first correspondence found in the record is a letter from Grote, the salesman, to appellant, dated August 25, 1947. This letter was merely a request for the serial numbers of the 19 scales purchased.

Appellant did not answer this communication, but on October 29, 1947, some two and a half months after the contract was signed, appellant directed a letter, not to Grote but to the respondent company. The letter never mentioned the supposedly oral agreement for exclusive territorial

rights but spoke about appellant having told Grote that he, the appellant,

"was interested in his complete proposition and that I would do business with him providing that he could deliver the proper credentials to me showing discounts and see what the proposition consisted of."

This letter was forwarded by the respondent company to Grote who replied to appellant directly in a letter dated November 11, 1947 and which letter is devoted toward telling appellant how good Grote had been to him because they were fellow Shriners. On November 14, 1947, the appellant answered Grote's letter of November 11th and for the first time mentioned the failure.

The majority opinion states,

"After examining the record closely, we cannot find any circumstances that would raise a doubt as to the truth of defendant's testimony. It seems *reasonable and consistent with truth to us*. We hold, therefore, that defendant's testimony was clear and convincing in support of his answer and counterclaim." [Emphasis added.]

But it is the business of the trial judge who has the witnesses before him to determine wherein lies the truth. And it is not the province of this court to determine whether the testimony in the mind of the trial judge met the standard of being "clear and convincing" and to hold that he who was confronted by the witnesses should have found the testimony to be clear and convincing. The majority have from the lifeless record, measured the quality of the testimony and have determined that it seems reasonable and consistent with truth. This should not be done unless it can be said that no mind reasonably acting in this matter could find that it was not clear and convincing. Can it be said that such is the case here? I need not labor this further. For further amplification, I refer to my concurring opinion in the case of *Sine* v. *Harper*, 118 Utah 415, 222 P. 2d 571, 584, where I carefully considered the two elements which must be taken into consideration by the

review court in assessing the conclusion of the fact finder who is under duty to apply the clear and convincing evidence rule.

The trial judge is by the review court given latitude in applying the clear and convincing test just as he is given latitude in applying the mere or bare preponderance test. See concurring opinion in *Stanley* v. *Stanley,* 97 Utah 520, 94 P. 2d 465, where it was held that if in equity cases the evidence read from the record appears to preponderate slightly against the conclusions of the lower court we would nevertheless follow the conclusions of the chancellor. So, too, even if the evidence appears to this court to fall slightly short of being clear and convincing, we will nevertheless hold it to be clear and convincing because of the margin allowed the trial court due to his advantage in being confronted with the live evidence rather than a lifeless record, but subject to the further application of the oft used and well known objective test that if no reasonable man, judging from the record, could conclude from that record that the evidence is clear and convincing, the review court will not affirm. Certainly, it cannot be said in this case that from the record every reasonable mind would have been compelled if sitting on the trial bench to find Zee's testimony clear and convincing.

Of course, one must in all probability conclude that Grote, was untruthful in stating that he was vice president of the plaintiff company, but the trial judge may not have thought that deceit to have induced the contract and it would not necessarily mean that the contract was not as it purported to be. It was still the province of the trial judge to determine what the real contract between the parties was and whether the circumstance of dishonesty would itself cancel out the effect of what he, the trial judge, may have concluded were inherently improbable provisions of the claimed contract. The very assembling of these factors possessing the capability of pulling the mind in two directions would seem to preclude any possibility of a review court holding

that the evidence must have been in law clear and convincing.

We repeatedly announce the rule that the trial court is in a better position to weigh the imponderables than is this court, and yet we reverse his determination because we accept appellant's testimony without question. Our job is to determine if the trial court has been arbitrary in finding as he did in view of the record and the imponderables not shown by the record. While the transcript might favor appellant, this is one of those cases which can be better resolved by the trial judge. I believe he could have accepted appellant's version and found for him, but I further believe he could reasonably reject appellant's claim without being legally arbitrary and capricious. I, therefore, believe the judgment should be affirmed.

McDONOUGH, J., concurs in the views expressed by WOLFE, C. J., in his dissenting opinion.